UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JERED LOPEZ** | **CIVIL ACTION** |
| **VERSUS** | **NO. 06-3048** |
| **MARLIN GUSMAN, SHERIFF AND DEPUTIES, ALL UNKWN. NAMES** | **SECTION "N"(4)** |

### REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct a hearing, including an Evidentiary Hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to **Title 28 U.S.C. § 636(b)(1)(B) and (C), § 1915e(2), and § 1915A**, and as applicable, **Title 42 U.S.C. § 1997e(c)(1) and (2)**. Upon review of the entire record, the Court has determined that this matter can be disposed of without an Evidentiary Hearing.

**I.     Factual Summary**

   **A.     The Complaint**

The plaintiff, Jered Lopez ("Lopez"), is presently housed in the Community Service Center in New Orleans, Louisiana. Lopez filed this *pro se* and *in forma pauperis* complaint pursuant to Title 42 U.S.C. § 1983 against Orleans Parish Criminal Sheriff Marlin Gusman and unnamed sheriff's deputies seeking damages as a result of the conditions in the Orleans Parish Prison system ("OPP") after Hurricane Katrina.

Lopez alleges that he saw the mayor of New Orleans on television on August 26, 2005, and that Sheriff Gusman announced that he had no plans to evacuate the in OPP. The Sheriff advised that everything was under control and that the prison had plenty of food and generators.

Lopez alleges that, on August 29, 2005, while housed on the fourth floor of the HOD, water began to rise out of the toilets and the lights went out. He claims that they asked the deputies for help and were told that they would be moved to a safe place. He stated that the guards later told them to remain in their cells or they would be shot. He further claims that the guards told them not to drink the water but he had already been drinking it for a couple of days. He claims that the deputies and the Sheriff left him and the other inmates in the flooded jail with no food, no clean drinking water and no medical attention.

Lopez further complains that he was in fear for his life and no help came. He also claims that what ever food existed in the prison, the prison guards kept for themselves. He complains that they were left hungry, neglected and afraid. He also complains that they experienced difficulty breathing as there was no ventilation and he kept sitting in the jail hoping that someone would come.

He alleges that finally, unknown officers from the Louisiana State Penitentiary came to move the inmates, using guns and poor treatment. He claims that they were taken to the roof of the jail, where they remained for hours in the heat with no food or water. The inmates were then taken down through the parking garage to a boat. The boat took them to a bridge where they sat for hours and they were given one cup of water and a sandwich.

He claims that he was finally transported on September 2, 2005, to the Allen Correctional Center where he was given a bath, food, clothing and a clean bed. He complains that the delay of

the sheriff and his agents caused him great hardship, they disregarded and denied him liberty and his constitutional rights protected by the U.S. and Louisiana Constitutions were violated.

In an addendum to the complaint, Lopez alleges that he suffered physical injury as a result of the conditions of the jail which consisted of nausea and vomiting caused by the awful smell and taste of raw sewerage and water that covered the prison facility. He request that the court recognize that his vomiting was an unpleasant experience. He alleges therefore that he should be allowed to recover damages for the emotional and psychological aspect of his experience.

Lopez further claims that he suffered deliberate indifference to medical needs, was denied food, and made to sit in the heat, all in violation of the Eighth Amendment to the United States Constitution. He also complains that the delay of emergency help evidenced the intentional denial or concern for the inmates. He therefore seeks damages and a trial by jury.

**II.      Standard of Review**

Title 28 U.S.C. §§ 1915(e)(2), 1915A and Title 42 U.S.C. § 1997e(c) require the Court to *sua sponte* dismiss complaints filed by prisoners proceeding *in forma pauperis* upon a determination that they are frivolous. The Court has broad discretion in determining the frivolous nature of the complaint. *See Cay v. Estelle,* 789 F.2d 318 (5th Cir. 1986), *modified on other grounds, Booker v. Koonce,* 2 F.3d 114 (5th Cir. 1993). However, the Court may not *sua sponte* dismiss an action merely because of questionable legal theories or unlikely factual allegations in the complaint.

Under these statutes, a claim is frivolous only when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams,* 490 U.S. 319 (1989); *Talib v. Gilley,* 138 F.3d 211, 213 (5th Cir. 1998). A claim lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist. *Harper*

*v. Showers,* 174 F.3d 716, 718 (5th Cir. 1999). It lacks an arguable factual basis only if the facts alleged are "clearly baseless," a category encompassing fanciful, fantastic, and delusional allegations. *Denton v. Hernandez,* 504 U.S. 25, 32-33 (1992); *Neitzke,* 490 U.S. at 327-28. Therefore, the Court must determine whether the plaintiff's claims are based on an indisputably meritless legal theory or clearly baseless factual allegations. *Reeves v. Collins,* 27 F.3d 174, 176 (5th Cir. 1994); *see Jackson v. Vannoy,* 49 F.3d 175, 176-77 (5th Cir. 1995); *Moore v. Mabus,* 976 F.2d 268, 269 (5th Cir. 1992).

**III.     Analysis**

    **A.     Claims Against Sheriff Gusman and the Unidentified Deputies**

Lopez complains that the evacuation process at OPP during Hurricane Katrina was not timely and was negligently performed, which caused him to suffer without food, medical attention, and water for several days. He further alleges that he was required to live in raw sewerage and suffered nausea as a result. He contends that this was more than a *de minimis* physical injury suffered as a result of the deliberate indifference of the Sheriff and deputies. Lopez, therefore, contends that the manner and timing of the evacuation constituted cruel and unusual punishment.

The Eighth Amendment's prohibition on "cruel and unusual punishments" forbids conditions of confinement "which are incompatible with 'the evolving standards of decency that mark the progress of a maturing society' . . . or which 'involve the unnecessary and wanton infliction of pain.'" *Estelle v. Gamble*, 429 U.S. 97, 102-03 (1976) (citations omitted). "[C]onditions that cannot be said to be cruel and unusual under contemporary standards are not unconstitutional. To the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).

Proof of an individual defendant's personal involvement in the alleged wrong is, of course, a prerequisite to his liability on the claim for damages under §1983. However, a supervisory official, like Sheriff Gusman, cannot be held liable pursuant to § 1983 under any theory of *respondeat superior* simply because an employee or subordinate allegedly violated the plaintiff's constitutional rights. *See Alton v. Texas A&M University*, 168 F.3d 196, 200 (5th Cir. 1999); *see also Baskin v. Parker*, 602 F.2d 1205, 1220 (5th Cir. 1979). Moreover, a state actor may be liable under § 1983 only if he "was personally involved in the acts causing the deprivation of his constitutional rights or a causal connection exists between an act of the official and the alleged constitutional violation." *Douthit v. Jones*, 641 F.2d 345 (5th Cir. 1981); *see also Watson v. Interstate Fire & Casualty Co.*, 611 F.2d 120 (5th Cir. 1980).

Lopez alleges that some of the unidentified prison guards left the inmates in the facility. He does not identify these guards and therefore has not properly named them as defendants. Nevertheless, Sheriff Gusman can not be held liable under § 1983 for the actions or neglect of the deputies under his employ.

In addition, Lopez has not alleged that Sheriff Gusman was personally involved in the occurrences at the prison or in the evacuation process itself. Lopez has not alleged that Sheriff Gusman was personally involved in the denial of food, water or medical care before or during the evacuation. Without some showing of personal involvement, the claim against the Sheriff should be dismissed.

Furthermore, to the extent Lopez claims that Sheriff Gusman or the unnamed deputies acted negligently in responding to or preparing for this emergency situation, his claims are still frivolous. Acts of negligence do not implicate the Due Process Clause such to give rise to a claim under §

1983.  *See Daniels v. Williams*, 474 U.S. 327, 328 (1986); *see also Davidson v. Cannon*, 474 U.S. 344 (1986).  Allegations amounting to negligence cannot support a § 1983 claim for violation of the Eighth Amendment.  *Eason v. Thaler*, 73 F.3d 1322, 1328-29 (5th Cir. 1996) (noting no negligent deprivation of religious rights or gross negligence in permitting a gas leak to occur); *Hare v. City of Corinth, Ms.*, 74 F.3d 633, 641-42, 646 (5th Cir. 1996) (finding no negligent failure to protect); *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993) (noting that negligent medical care does not constitute a valid claim under § 1983); *Doe v. Taylor Independent School District*, 975 F.2d 137, 142 (5th Cir. 1992), *vacated on other grounds*, 15 F.3d 443 (5th Cir. 1994) ("Even when constitutional liberty interests are implicated, not all bodily injuries caused by state actors give rise to a constitutional tort, for it is well settled that mere negligence does not constitute a deprivation of due process under the Constitution.")

Officials, such as Sheriff Gusman or the unidentified deputies, must act with deliberate indifference to be liable under § 1983.  An official is deliberately indifferent to an inmate's health and safety in violation of the Eighth Amendment "only if he knows that the inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it."  *Farmer v. Brennan*, 511 U.S. 825, 847 (1994); *Jones v. Greninger*, 188 F.3d 322, 326 (5th Cir. 1999).  "Deliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of harm."  *Thompson v. Upshur County, Tex.*, 245 F.3d 447, 459 (5th Cir. 2001).  In this case, Lopez does not set forth any fact which would show that Sheriff Gusman or the unidentified deputies acted in such a manner that would intentionally put him at risk.  Gross negligence is simply not enough to state a claim under § 1983.

In addition, Lopez has also failed to show that the temporary conditions caused by the hurricane violated his constitutional rights.  In order to prove that the conditions of his confinement violated the Fourteenth Amendment, an inmate must show, "that, from an objective standpoint, [they] denied him the minimal measure of necessities required for civilized living".  *Farmer*, 511 U.S. at 834.  An episodic act or omission of a state jail official does not violate an inmate's constitutional right to be secure in his basic human needs unless he demonstrates that the official acted or failed to act with deliberate indifference to those needs.  *Hare*, 74 F.3d at 633.

Lopez alleges that he was required to sit in the jail for several days  before being evacuated on September 2, 2005.  He complains that during that period he had no food, he lived in unsanitary conditions, and was left  with no assistance from the guards.  Even if Lopez could establish that the alleged neglect amounted to some intentional failure on the part of the guards at the prison, he could only proceed under § 1983 if he could show that he sustained a physical injury as a result of his exposure to these temporary conditions.

The only discomfort alleged by Lopez is that he was nauseous after having lived in the smell of sewerage, had only contaminated water, and was not provided any food during that period.  However, Title 42 U.S.C. § 1997e(e) provides that "no Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury."  The United States Fifth Circuit, in interpreting this provision, has held that the phrase "physical injury" in § 1997e(e) means an injury that is more than *de minimis*, but need not be significant.  *Alexander v. Tippah County, Miss.*, 351 F.3d 626 (5th Cir. 2003) (quoting *Harper*, 174 F.3d at 719 (quoting *Siglar v. Hightower*,

112 F.3d 191, 193 (5th Cir. 1997) (where the Fifth Circuit first set forth its § 1997e(e) definition of physical injury))).

In *Alexander*, the Fifth Circuit held that vomiting and nausea were *de minimis* injuries and were therefore insufficient for recovery under § 1997e(e)). *Alexander*, 351 F.3d at 631. This same type of injuries have been alleged by Lopez. Therefore, Lopez's claims against the Sheriff and the unidentified deputies seeking recovery for his nausea should be dismissed as frivolous and/or for failure to state a claim for which relief can be granted under Title 28 U.S.C.§ 1915e(2) and Title 42 U.S.C. § 1997(e)(1).

### B. Claims under the Louisiana Constitution

Lopez contends that the actions of the Sheriff and the unidentified deputies violated his state constitutional rights which also forbid cruel and unusual punishment and otherwise acted negligently in abandoning the jail and delaying evacuation. He brings these claims under Louisiana state law. Under a broad reading, Lopez appears to bring these claims pursuant to Section 20 of the Louisiana State Constitution which provides that no law shall subject any person to euthanasia, to torture, or to cruel, excessive, or unusual punishment. Also, La. Civ. Code art. 2315 *et seq.* provides that a person is liable for any act whatsoever which causes injury to another.

The "general rule" in the Fifth Circuit "is to decline to exercise jurisdiction over pendent state law claims when all federal claims are dismissed or otherwise eliminated from a case prior to trial." *Batiste v. Island Records, Inc.*, 179 F.3d 217, 227 (5th Cir. 1999) (citation omitted); *accord Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 350 n.7 (1988) ("in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine . . . will point toward declining to exercise jurisdiction over the

remaining state-law claims"). The court is recommending dismissal of Lopez's federal claims in their entirety as frivolous and/or for failure to state a claim for which relief can be granted. Therefore, his state law claims should be dismissed without prejudice because the Court declines to exercise its supplemental jurisdiction where there are no remaining federal claims.

## IV.  Recommendation

It is therefore **RECOMMENDED** that Jered Lopez's Title 42 U.S.C. § 1983 against Sheriff Gusman and the unidentified deputies be **DISMISSED WITH PREJUDICE** as frivolous and/or for failure to state a claim for which relief can be granted pursuant to Title 28 U.S.C. § 1915(e) and § 1915A and Title 42 U.S.C. § 1997e.

It is further **RECOMMENDED** that Lopez's claims brought pursuant to Louisiana law should be **DISMISSED WITHOUT PREJUDICE** because the Court declines to exercise its supplemental jurisdiction.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within **ten (10) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).

New Orleans, Louisiana, this ___18th___ day of _____October_____, 2006.

_____
**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**